BC

FILED
9/3/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SWEEPSTEAKS LIMITED d/b/a STAKE.US,<br>Plaintiff,<br>v.<br>SZYMON ZAWADZKI,<br>Defendant. | Case No. 1:26-cv-06840<br>Hon. Matthew F. Kennelly |

# EXHIBIT P-1 TO THE PATTERN DECLARATION — CHRONOLOGY OF SWEEPSTEAKS' SHIFTING DEFENSES AND THEIR INTERNAL CONTRADICTIONS

*Every entry is tied to a document identifier: AAA WebFile document numbers (May 14, 2026 export), Gmail message IDs in szymonfitness@gmail.com, or docket entries in this case. Quotations are verbatim.*

## A. The sequence of defenses, in the order they were deployed

| Date | Actor / vehicle | Defense or narrative (verbatim where quoted) | What the record shows |
|---|---|---|---|
| June 23, 2024 | Stake support ("Jovana") | Multi-account "fraudulent activity"; SimonZ "suspended by its host due to responsible social gaming concerns"; "we are compliant with the applicable laws." | WF 34932252. First appearance of the unclean-hands theme. Stake's own Exhibit D later aggregates every account as "Claimant's"; its Apr. 8, 2025 email markets to the "suspended" account (WF 39148592). |
| Aug. 30, 2024 | Calhoun letter to AAA | Claimant "did not exhaust that process and thus has no standing to initiate an arbitration." | WF 35538084. Rebutted Sept. 2, 2024 with Stake's own May 30 / June 23 emails (WF 35538111). Never raised again; Sept. 9 "ripeness … once appointed" (WF 35538518) never pursued. |
| Oct. 22, 2024 | Answering Statement | 28-1(b)(13) free-play exception; breach of Terms; unclean hands ("multiple accounts"); indemnity; reservation of rights. | WF 35866297. No counterclaim filed. Indemnity plea later becomes the Mar. 17, 2026 warning that payments "would … render him subject to claims." |

| Date | Actor / vehicle | Defense or narrative (verbatim where quoted) | What the record shows |
|---|---|---|---|
| Nov. 1, 2024 – Jan. 14, 2025 | Calhoun ↔ Kilpela (phone only); WKS to Claimant | Opening offer $10,000 (late Oct.); Claimant's counter $225,000; Nov. 21 written offer; Jan. 7 letter: "This case will likely yield a less favorable outcome for your client"; Jan. 9: $25,000; counsel's "65-115k" "based on my experience, not on anything Stake had expressly communicated." | G 192e853b1c281bff; 194d2b919472d795; 194d6d512c31dbb2. Dec. 19: "back and fourths have been productive … Stake has been slowing moving up" (G 193df5daadb5725b) while Calhoun's Jan. 7 letter records no response from WKS since Nov. 21. |
| ≈ Jan. 25 – Feb. 4, 2025 | Slade call; Kilpela email | Sonnenberg v. Amaya Grp. Holdings: the Illinois statute "is likely to be held to be unenforceable against Stake by an arbitrator"; "your odds of winning at arbitration are small." | G 194d2b919472d795 ¶¶ 7–8. Sonnenberg concerned peer-to-peer poker where the site was not the counterparty; Stake's slots and "Stake Originals" are house-banked. Claimant's Interrogatory 8 (RTP, house edge, Originals) went directly to this; Stake refused it as having "no bearing" (WF 38557617; 38806180). |
| Feb. 26, 2025 | Slade memorandum to Claimant | "[Y]ou violated Stake.US's Terms and Conditions … multiple accounts … § 4.2"; § 24 "waiver of claims … and indemnification"; free play makes gambling "very questionable"; Sonnenberg/Posner; "the voluntary payment doctrine"; unclean hands "due to your role in promoting Stake.US"; "executives for Stake residing in Australia"; "you should not have any problem with representing yourself." | WKS memo dated Feb. 26, 2025 (re-attached G 196b1e9e9b0f31c4). Lists every defense Ifrah briefed Feb. 25, 2026 except limitation and net winner; adds one Stake never pleaded; written 20 days after the "two suicide attempts" email. |
| May 16, 2025 | Calhoun to Claimant | $45,000 plus Birches Health enrollment; figure "would no longer hold and could decrease" if Stake spends more on the arbitration. | G 196dbd0c5da7d924. Declined May 22; counter-proposal May 22 and 25 (G 196f92397eb2ca31; 197066f3abfb5f7a). |

| Date | Actor / vehicle | Defense or narrative (verbatim where quoted) | What the record shows |
|---|---|---|---|
| July 23 – Aug. 22, 2025 | Briggs; Order #2; draft agreement dated July 31, 2025 | Order #2: "a settlement appeared imminent." Aug. 1: "I have attached the draft settlement agreement … we are requesting contact and bank information from you." Draft: $40,000 (May 16 offer was $45,000); Birches Health; account "permanently deactivated," never "register … or play"; "no other payment … or other remittance … is owed"; release of "parents, subsidiaries, affiliates"; Delaware law and venue; confidentiality; non-disparagement/non-interference with "business, family, or personal relationships"; dismissal with prejudice within 3 days of Effective Date, payment within 14 days of execution. Follow-ups Aug. 13 and Aug. 22. | WF 37894596; G 198636b7e686b381; 198a554cacfa4207; 198d2051d4bf3fb6; draft agreement in Claimant's possession. Sept. 3 Order #3: "impasse" (WF 38197391). |
| Oct. 15, 2025 | Respondent's discovery | Interrogatory 4: "Identify any diagnosis or treatment … for gambling addiction." RFP 6: diagnosis records. RFP 7: "All documents that support or contradict any contention." | WF 38532342. Stake demands the vulnerability record while objecting, Nov. 13, that its own systems have "no bearing." |
| Nov. 13, 2025 | Respondent's discovery response | "81 different 'interrogatories'"; every Stake-side request has "no bearing"; "payments were made in Stake Cash"; Jan. 18, 2024 "health and safety" suspension; "not in possession of any communications … concerning … the Terms of Service"; "has not been subject to governmental action." | WF 38806180. Served 6:32 p.m. CT Nov. 13 with "a video of communications" (G 19a7fc7a72d6163e); the .zip could not be uploaded to WebFile (G 19a839b95912130e). |
| Nov. 19–25, 2025 | Calhoun/Cohen call; ledger | $50,000 discussed; counsel to call "next week." Affiliate stream ends (last ledger entry Nov. 25). | Aff. ¶¶ 32–36 (WF 39148607); Ex. D (WF 39914415). |
| Dec. 17, 2025, 1:35 p.m. CT | Hess email; Amended Answering Statement | NEW: "Because Claimant has redeemed more money than the sums he spent on purchases, he did not lose money"; "multiple accounts to conceal his identity and evade his own exclusion from play"; "Zawadzki continues to earn money from his association with Stake"; six-month limitation; "offset by the amount that Claimant was paid in commissions." | G 19b2dcfcd16d5f49; WF 39144012. Filed 34 days after discovery closed. Dec. 18 Order #6 ¶ 1: "The parties may not amend their claims, counterclaims, or affirmative defenses" (WF 39160997). |
| Feb. 25, 2026 | Pre-Trial Brief | Limitation (Holland v. Swain, 1879); not gambling (28-1(b)(13); Soto; Phillips); Stake "is not a 'winner'" (Phillips; Sonnenberg at 11); "no loss"; "pocketed $131,546.55"; Exhibits E/F; ToS § 24.2(a) limitation of liability invoked against the sanctions motion. | WF 39914414; 39914415. Exhibit E (Dec. 24, 2023–Apr. 1, 2024) netted against Exhibit F (Dec. 28, 2024–Nov. 25, 2025). |
| Mar. 16–17, 2026 | Recusal and Emergency Motion Responses | "generative AI"; "offered no explanation for his delay"; "ceased making payments … because … suing"; "if his Demand were correct, such payments would amount to participation in an illegal activity and render him subject to claims." | Dkt. 1-6 Exs. 1–2. Explanation for timing was in the Mar. 5 transmission email (G 19cbe8dd3cd8cf5f). |

| Date | Actor / vehicle | Defense or narrative (verbatim where quoted) | What the record shows |
|---|---|---|---|
| Apr. 23 & 29, 2026 | Interim Award; fee motion | "has not established … the existence of gambling, a winner, and a loser"; "did not request his purchase and redemption data"; "offered no factual or legal justification." | Dkt. 1-4; Dkt. 1-5 at 6, 9. |
| Sept. 2–3, 2026 | Ward declarations (Dkts. 13-1, 15-1) | "After Plaintiff failed to appear"; "Plaintiff Szymon Zawadzki is neither a minor nor an incompetent person"; 9% interest "from the date of the award" under a statute that runs from "the date of the judgment"; Exhibit S-1 "3 months" for a four-month span; total $14,478.09. | Dkts. 13-1, 13-5, 15, 15-1, 15-2. The Final Award (Dkt. 1-7) awards no interest and allowed 90 days to pay. |

## B. The contradictions the sequence creates

| Position | Opposing position by the same party | Why they cannot both be true |
|---|---|---|
| Stake Cash "have no value," "cannot be purchased," and a "player cannot 'lose' [Stake Cash]" (Pre-Trial Brief at 2, 4, 11; Ex. A §§ 7–8). | "Claimant has redeemed more money than the sums he spent on purchases, he did not lose money" (Amended Answer, Dec. 17, 2025); "redeemed $619,936.28 … pocketed $131,546.55" (Pre-Trial Brief at 5). | The net-winner theory counts Stake Cash redemptions as money won and money lost. A token that has no value and cannot be lost cannot also be the medium in which a customer becomes a "net winner." |
| Stake is not a "winner" because it "keeps the money a player pays … no matter whether that player wins or loses" (Pre-Trial Brief at 10, citing Phillips). | Stake paid out $619,936.28 against $488,389.73 in purchases (Exhibits C–D); Stake "ceased making payments" to Claimant (Mar. 17, 2026). | An operator whose payouts exceed its receipts and depend on game outcomes does not keep the money regardless; it is the counterparty that wins when the player loses. The ledger Stake filed to prove "no loser" proves "winner." |
| Sonnenberg: the Illinois statute is "likely to be held to be unenforceable against Stake" (WKS, Feb. 4, 2025); Stake is not a winner (Pre-Trial Brief at 11). | Stake refused Interrogatory 8 (RTP, house edge, "Stake Originals" vs. third-party games) as having "no bearing" (Nov. 13, 2025). | Sonnenberg turned on a site that was not a party to the wager. Whether Stake is the counterparty to its slots and Originals is exactly what Interrogatory 8 asked and Stake refused to answer. |
| Stake Cash is a free "promotional tool," like a McDonald's sweepstakes (Pre-Trial Brief at 2, 8). | "Respondent confirms that payments were made in Stake Cash" (Nov. 13, 2025); daily reload credits of $750–$1,250 for streamed gambling (Aff. ¶¶ 41–42); 73% of all "redemptions" fall in the streamer window (Ex. D). | A promotional entry is not the currency in which a company pays its contractors. Compensation credited in Stake Cash and then recounted as the recipient's "redemptions" is the mechanism, not a sweepstakes. |
| "Zawadzki continues to earn money from his association with Stake and market it to others" (Amended Answer, Dec. 17, 2025). | Affiliate stream terminated Nov. 20–25, 2025 (Ex. D); "Respondent ceased making payments … because Mr. Zawadzki is in the process of suing" (Mar. 17, 2026). | On the day Stake pleaded that Claimant "continues to earn money" from it, Stake had already cut that income off, and later said it did so because he sued. |
| "Respondent suspended Claimant's account to ensure his health and safety" on Jan. 18, 2024 (Nov. 13, 2025). | 65 redemptions ($4,695.10) between Jan. 18 and Apr. 15, 2024 (Ex. D); Apr. 8, 2025 promotional email to "SimonZ"; VIP reactivation emails Feb.–Mar. 2026 (Compl. ¶¶ 48A, 50I). | A suspension for the customer's safety is not followed by two years of reloads, bonuses, and "$50,000 shot" emails to the same person. |

| Position | Opposing position by the same party | Why they cannot both be true |
|---|---|---|
| Claimant "did not exhaust [the informal] process and thus has no standing" (Aug. 30, 2024). | Stake requested fourteen business days on June 7, 2024 and denied the claim on June 23, 2024 (WF 34932252). | The party that asked for time to investigate and then issued a denial cannot say the process was not attempted. |
| Unclean hands: "multiple accounts to conceal his identity and evade his own exclusion" (Amended Answer). | DentedOne created for Claimant through Stake affiliate Richie and "Sonyvaio" in May 2024 (Compl. ¶¶ 21A–21C); Exhibits C–D aggregate every account as "Claimant's." | Accounts Stake's own affiliates created, and that Stake tracks and totals as Claimant's, are not concealment. |
| Indemnity: Claimant "is contract-bound to indemnify Respondent" (Oct. 22, 2024); payments "would … render him subject to claims" (Mar. 17, 2026). | No counterclaim was ever filed (Answering Statement: "Filing a Counterclaim: No"); the fee award rests on sanctions, not indemnity. | A threat pleaded for eighteen months and never pursued functions as leverage, not as a claim. |
| $45,000 "plus enrollment in a treatment program" (May 16, 2025), with the warning that the figure "could decrease." | $40,000 in the July 31, 2025 draft agreement; "attempting to settle the case with him" characterized as the conduct Claimant sought to sanction (Mar. 16, 2026). | The number moved down after the consumer declined. A price that falls when the addict refuses is leverage; the later filing describes it as generosity. |
| Account "shall be permanently deactivated"; Claimant "shall never register or attempt to register or play on the Website" (draft agreement, July 31, 2025). | @dunjaVIP reload session Nov. 20, 2025; Stake.com VIP-return email Feb. 16, 2026; "Andy Stake" new VIP host Mar. 21, 2026; "$20 bonus + $50,000 shot" Mar. 25, 2026; "boosted reload session" Mar. 28, 2026. | The operator that drafted a lifetime exclusion for this customer in July 2025 solicited him to play for the next eight months. |
| "No other payment, consideration, prize, or other remittance from the Company is owed to him" (draft release, July 31, 2025). | "Mr. Zawadzki has no affiliate or referral contract with Respondent and has no legal entitlement to payment" (Mar. 17, 2026). | A release is drafted to extinguish obligations that exist. The July 2025 draft was written to end the same payments Sweepsteaks later said it never owed and then cut off "because … suing." |

## C. What the sequence establishes

Each defense was deployed against a consumer whose counsel had told him he was "unlikely to succeed," and each was abandoned or contradicted when tested against a document. The standing defense died on Stake's own denial letter. The Sonnenberg defense could not survive an interrogatory about who banks the games, so the interrogatory was refused. The no-value defense could not coexist with the operator's admission that it paid its contractor in Stake Cash, so the operator recounted its own payments as the contractor's winnings and called him a net winner — a theory that entered the case thirty-four days after discovery closed and one day before the arbitrator froze the pleadings, and that was then adopted, without a response from the consumer, by an arbitrator who had been told the consumer "did not request" the ledgers and "offered no explanation" for his timing.